IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARRY S. MCCAMMON,                 :

     Plaintiff,                    :

vs.                                :     CIVIL ACTION 05-0718-BH-M

JAMES JOHNSON,                     :

     Defendant.                    :


REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant's Motion for Summary Judgment (Docs. 21, 22, 41) and Plaintiff's opposition thereto.  (Docs. 24, 25, 28). For the reasons stated below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

I.  SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.  On September 13, 2005, Plaintiff was arrested and booked into the Baldwin County Corrections Center ("BCCC") pursuant to an "Order of Probation and Parole Officer Authorizing Arrest of Parole Violator" ("parole board

warrant"), dated that same day.  (Doc. 1 at 5; Doc. 21, att. 1 at 2).  The parole board warrant was signed by Officer Edwin Irvin of the Baldwin County Pardons and Paroles Office and directed Defendant James Johnson, Sheriff of Baldwin County, to arrest Plaintiff and hold him until the arrival of a warrant from the Alabama Department of Corrections ("ADOC"), but not more than twenty days.  (Doc. 1 at 5; Doc. 21, att. 1 at 2).

Eight days later, on September 21, 2005, Donal Campbell, Commissioner of the ADOC, issued a "fugitive warrant" to Officer Irvin directing him (or "any peace officer") to "retake" Plaintiff and hold him until he could be returned to the ADOC. (Doc. 41, att. 3 at 2; Doc. 41, att. 4 at 8).  There was no time limit or expiration date on the fugitive warrant.  (Doc. 41, att. 3 at 2).  Plaintiff remained incarcerated at the BCCC until the ADOC took custody of him on December 21, 2005.  (Doc. 21, att. 1 at 12-13).

In his Complaint, Plaintiff claims that the BCCC never received notice of the fugitive warrant and, thus, had no authority to hold him after the expiration of the twenty-day parole board warrant on October 4, 2005.  (Doc. 24 at 2). According to Plaintiff, he was falsely imprisoned in the BCCC from October 4, 2005, to December 21, 2005, under an expired warrant, in violation of his Fourteenth and Eighth Amendment

2

rights.  (Doc. 1 at 6).

## II.  PROCEDURAL ASPECTS OF THE CASE

On December 14, 2005, Plaintiff filed a § 1983 Complaint
against Baldwin County Sheriff, James Johnson, alleging "false
imprisonment, cruel and unusual punishment, and deprivation of
pursuit of happiness" arising out of his incarceration in the
BCCC after the expiration of the twenty-day hold specified in the
parole board warrant for his arrest.  (Doc. 1).  The Court
construes Plaintiff's allegations as asserting claims under the
Fourteenth and Eighth Amendments.  Plaintiff seeks compensatory
damages for each day that he was held in the BCCC without a valid
arrest warrant, as well as punitive damages and declaratory
relief.  (Doc. 1 at 9).

On September 22, 2006, Defendant Sheriff James Johnson filed
a Special Report and Answer, denying Plaintiff's allegations and
asserting various defenses, including absolute and qualified
immunity.  (Docs. 22, 23).  On April 12, 2007, the Court ordered
that Defendant's Special Report and Answer be treated as a Motion
for Summary Judgment.  (Doc. 27).  On October 20, 2006, and May
2, 2007, Plaintiff filed responses in opposition to Defendant's
Motion for Summary Judgment, reasserting the claims set forth in
his Complaint.  (Docs. 24, 25, 28).  On February 11, 2008, the
Court ordered Defendant to Supplement his Special Report with

additional information, which he did on March 13, 2008.  (Doc.
41).  Defendant's Motion for Summary Judgment and Plaintiff's
responses are now before the Court.

                    III. SUMMARY JUDGMENT STANDARD

        In analyzing the propriety of a motion for summary judgment,
the Court begins with these basic principles.  The Federal Rules
of Civil Procedure grant this Court authority under Rule 56 to
render "judgment as a matter of law" to a party who moves for
summary judgment.  "[S]ummary judgment is proper 'if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact. . . .'"
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.
R. Civ. P. 56(c)).

        The Court must view the evidence produced by "the nonmoving
party, and all factual inferences arising from it, in the light
most favorable to" that party.  Barfield v. Brierton, 883 F.2d
923, 934 (11th Cir. 1989).

        However, Rule 56(e) states that:

            an adverse party [to a motion for summary
            judgment] may not rest upon the mere
            allegations or denials of the adverse party's
            pleading, but the adverse party's response,
            by affidavits or as otherwise provided in
            this rule, must set forth specific facts
            showing that there is a genuine issue for
            trial.  If the adverse party does not so

                                4

respond, summary judgment, if appropriate,
shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at
325-27.

"[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party. . . .  If the evidence is merely
colorable, . . . or is not significantly probative, . . . summary
judgment may be granted." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary
judgment is mandated where a party 'fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs.,
Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

<u>IV.  DISCUSSION</u>

As stated above, Plaintiff seeks redress pursuant to 42
U.S.C. § 1983 for an alleged constitutional deprivation arising
out of his incarceration in the Baldwin County Corrections Center
from September 13, 2005, to December 21, 2005.  Specifically,
Plaintiff claims that Sheriff James Johnson falsely imprisoned
him in the BCCC from October 4, 2005 (when the twenty-day parole
board warrant expired), to December 21, 2005 (when Plaintiff was
released to the custody of the ADOC), in violation of his rights

under the Eighth and Fourteenth Amendments.[1]   The Court

disagrees.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).

---

[1] Plaintiff does not specify whether he is suing Sheriff
Johnson in his official or individual capacity or both.  Thus,
the Court will consider both.  As an Alabama sheriff, Defendant
Johnson is a state official entitled to absolute immunity from
suit for damages in his official capacity.  See West v. Tillman,
496 F.3d 1321, 1326 n.7 (11th Cir. 2007) (citing Lancaster v.
Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997)).
Furthermore, "[q]ualified immunity protects government officials
performing discretionary functions from suits in their individual
capacities unless their conduct violates 'clearly established
statutory or constitutional rights of which a reasonable person
would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th
Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).
In determining whether qualified immunity is appropriate in a
given case, "[t]he court must first ask the threshold question
whether the facts alleged, taken in the light most favorable to
the plaintiffs, show that the government official's conduct
violated a constitutional right."  Dalrymple, 334 F.3d at 995
(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found
herein that Plaintiff's allegations do not establish a
constitutional violation, "there is no necessity for further
inquiries concerning qualified immunity."  Saucier, 533 U.S. at
201.

It is undisputed in this action that Plaintiff was originally arrested and incarcerated in the BCCC pursuant to the parole board warrant issued by Officer Irvin on September 13, 2005.  As discussed above, the parole board warrant directed Sheriff Johnson to arrest Plaintiff for violating the conditions of his parole and to hold Plaintiff until the receipt of a warrant from the ADOC, but not more than twenty days.[2]  (Doc. 41, att. 1 at 1).  Eight days later, on September 21, 2005, the ADOC sent a fugitive warrant for Plaintiff's arrest to Officer Irvin, directing him (or "any peace officer") to "retake" Plaintiff, "wherever he may be found," and hold him until the ADOC assumed custody of him, which happened on December 21, 2005.  (Doc. 41, att. 3 at 2; Doc. 21, att. 1 at 12-13).

Plaintiff argues that no one at the BCCC, including Sheriff Johnson, knew of the existence of the fugitive warrant, and, thus, his detention after the expiration of the twenty-day parole board warrant was unconstitutional.  While it is undisputed that Officer Irvin knew of the existence of the subsequent fugitive warrant issued by the ADOC directing that Plaintiff be detained, the record is unclear as to whether anyone ever communicated that

---

[2] The record shows that Plaintiff's parole was revoked after he tested positive for cocaine.  (Doc. 41, att. 4 at 7).

directive to the BCCC.[3]   Therefore, the Court will assume for purposes of this motion that the BCCC did not have actual formal notice of the fugitive warrant.

In order to establish a Fourteenth Amendment deprivation of liberty claim or an Eighth Amendment cruel and unusual punishment claim, Plaintiff must show that Defendant Johnson was "deliberately indifferent" to his constitutional rights.

> [A] § 1983 false imprisonment claim must meet the elements of common law false imprisonment and establish that the imprisonment worked a violation of fourteenth amendment due process rights. . . .  The constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release has been recognized in other circuits as well.  See Sivard v. Pulaski County, 959 F.2d 662 (7th Cir. 1992) (continued detention where sheriff knew it was wrongful states claim under § 1983 for due process violation); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992) (failure to release after officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under § 1983). The defendant's state of mind is also relevant to a § 1983 claim for substantive due process violations.  The Supreme Court has stated that negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life,

---

[3] Defendant has submitted a declaration from Supervisor John Brantley of the Baldwin County Pardons and Paroles Office explaining that, "[i]t is and has been the practice and procedure of the Probation and Parole Office for Baldwin County, Alabama, that upon receipt of a Department of Corrections fugitive warrant for a parole violator, the supervising officer is to file the warrant with the local Sheriff's office where the offender is incarcerated."  (Doc. 42, att. 1 at 3).  The record is silent, however, on whether this ever took place.

> liberty, or property.  <u>Davidson v. Cannon</u>,
> 474 U.S. 344, 347, 106 S. Ct. 668, 670, 88 L.
> Ed. 2d 677 (1986); <u>Daniels v. Williams</u>, 474
> U.S. 327, 328, 106 S. Ct. 662, 663, 88 L. Ed.
> 2d 662 (1986). . . .
> This court has, in cases dealing with
> prisoners and other persons in state custody,
> held that a showing of deliberate
> indifference is required to establish a
> violation of substantive due process rights
> protected by the fourteenth amendment.  The
> deliberate indifference requirement was
> adopted based on analogies to eighth
> amendment situations where the defendant's
> state of mind was relevant to the issue of
> whether a constitutional violation has
> occurred in the first place. . . .

<u>Cannon v. Macon County</u>, 1 F.3d 1558,  1562-63 (11th Cir. 1993)

(citations omitted) (footnotes omitted).  <u>See also</u> <u>West</u>, 496 F.3d

at 1333 (affirming summary judgment for sheriff and other jail

employees where inmates were detained past their release date,

but failure to release was the result of human error, not

deliberate indifference.).  In <u>West</u>, the Eleventh Circuit stated:

> That Plaintiffs were not released in a timely
> fashion from the Jail is bad.  Mistakes were
> made.  But no one is entitled to an error-
> free bureaucracy; and deliberate
> indifference-the federal constitutional
> standard-is a high standard.  As a matter of
> law, the record does not show that Defendants
> were deliberately indifferent to Plaintiffs'
> right to be released as ordered; instead, the
> evidence indicates that the errors that led
> to Plaintiffs' over-detentions were caused
> by-at worst-the Nonsupervisory Defendants'
> unfortunate lapses, which were mainly caused
> by the cuts in staff and budget for the Jail:
> a problem which the Supervisory Defendants
> did not ignore but undertook to address
> during the pertinent time.

Id.

The record in this action shows that, on November 4, 2005, Plaintiff filed a grievance with the BCCC stating that he should be released because the twenty-day hold ordered by his parole officer had expired. (Doc. 24 at 14). On November 23, 2005, in response to that grievance, Sergeant Tom Bryars wrote:

> You were arrested by the parole office. We have no records of when you were served with notice of a parole hearing or waived it. We have no record of [whether] or not you have had a parole hearing. We have no authority to release you unless the parole board gives us this authority. If your due process has been violated you need to file something with the parole board.

(Doc. 24 at 14). On that same date, Sergeant Bryars added a post-script: "According to the parole office, you have had a hearing and your parole has been revoked by the parole board." (Id. at 15). Plaintiff's grievance form and Sergeant Bryars's response were forwarded to Sheriff Johnson and to Plaintiff's parole officer, Ed Irvin. (Id.).

Construing all reasonable inferences in favor of Plaintiff, the evidence indicates that Sheriff Johnson's failure to release Plaintiff from custody after the expiration of the twenty-day hold order issued by Plaintiff's parole officer was the result of information that: (1) Plaintiff was a parolee who had been sentenced to a term of 99 years, 99 months, and 99 days in the penitentiary and who had violated the conditions of his parole;

10

and (2) a warrant for Plaintiff's arrest had been issued by Plaintiff's parole officer with a twenty-day hold order until an ADOC warrant could be obtained, at which time Plaintiff would be transferred to the ADOC and returned to the penitentiary. (Doc. 21, att. 1 at 2).  The evidence indicates that, at all times, regardless of whether they knew of the subsequent fugitive warrant, Sheriff Johnson and the BCCC staff acted in good faith in cooperation with the parole board in attempting to secure Plaintiff until his transfer to the custody of the ADOC could be accomplished, which did, in fact, happen on December 21, 2005. Defendant had in fact violated his parole and was not entitled to be out of custody.

This is a far cry from a situation where a law enforcement officer knows, or has reason to know, that an arrestee is entitled to be set free and, with deliberate indifference, simply refuses to do so.  Because Plaintiff has failed to present any evidence that his alleged lawful detention in the BCCC was the result of Sheriff Johnson's deliberate indifference to his right to be released, Sheriff Johnson is entitled to judgment as a matter of law on Plaintiff's claims.

<u>V.  CONCLUSION</u>

Based on the foregoing, the Court concludes that Defendant Sheriff James Johnson is entitled to summary judgment in his favor on all claims asserted against him by Plaintiff. Accordingly, it is recommended that Defendant's motion for

summary judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendant Johnson and against Plaintiff, Larry S. McCammon, on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. <u>Objection</u>. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the

magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 17th day of March, 2008.

                         s/BERT W. MILLING, JR.
                         UNITED STATES MAGISTRATE JUDGE